CALLIE MORGAN ET AL. V. W. H. OLIVER ET AL.

No. 1359. Decided November 10, 1904.

**1.—Condemnation—Public Land—Damages—Notice.**

The county may lay out a public road across inclosed lands without notice to the owner, but can not assess the damages without giving him notice and opportunity to be heard. (Pp. 223-225.)

**2.—Same—Statutes Construed.**

Construing Revised Statutes, articles 4674-4681, it is held that the reference to article 4371, Revised Statutes of 1879, contained in section 3 of the Act of February 7, 1885 (which act is incorporated in said articles), is to be construed in connection with the preceding article (4370, Rev. Stats., 1879) and permits the opening of the road only upon written consent of the owner or assessment of damages made after refusal of such consent. (Pp. 224, 225.)

**3.—Same.**

An order of the commissioners court laying out and declaring open a public road in 1891, without any notice to the owner or appointment of a jury to assess damages, though made upon a report of the jury of view laying out the road that no damages were incurred, did not authorize the opening of the road as against an owner not consenting, nor constitute a defense to his action against the sheriff for taking down his gates as an obstruction of the highway, or against the commissioners for ordering such proceeding; notice of assessment to the owner was necessary, and the jury of view were not authorized to assess damages. (Pp. 222-225.)

**4.—Same—Revised Statutes, 1895.**

It seems that the reference in article 4676, Revised Statutes, 1895, to article 4690, for the provisions governing the appointment of a jury to assess damages, is a mistake, article 4690 containing no such provisions. (P. 225.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Donley County.

Callie Morgan, joined by her husband, sued Oliver and others for damages, and the trial court instructed the return of a verdict for defendants. On their appeal the judgment was affirmed as to certain defendants and reversed and remanded as to others. Appellants obtained writ of error.

*J. H. O'Neill, D. B. Hill,* and *Stanley, Spoonts & Thompson,* for plaintiff in error.—Private property can not be taken, damaged or destroyed for or applied to public use without compensation. Const., Bill of Rights, sec. 17; Hamilton County v. Garrett, 62 Texas, 602; Wooldridge v. Eastland County, 70 Texas, 680; International & G. N. Ry. Co. v. Benitos, 59 Texas, 327; Texas & St. L. Ry. Co. v. Matthews, 60 Texas, 215.

No person's property can be taken for public benefit without due process of law, which includes notice and opportunity to defend and protest or object. Const. U. S., 14th Amendment.

This is binding on all the branches and instrumentalities of government or State. Chicago B. & Q. Ry. Co. v. Chicago, 166 U. S., 226.

In all proceedings whereby one person's property is to be taken for the benefit of the public or for another, or affecting the right or title of

the owner, the person to be affected is entitled to notice of the proceedings, although not so directed by the statute under which the proceeding is had. 7 Am. and Eng. Enc. of Pl. and Prac., 486, 487, Title, Eminent Domain; Parker v. Ft. Worth & D. C. Ry. Co., 84 Texas, 333; Peoria & R. I. Ry. Co. v Warner, 61 Ill., 52; Tracy v. Elizabethtown L. & B. S. Ry. Co., 80 Ky., 259; Cone v. Peters, 3 Mass., 229; Ayres v. Richards, 38 Mich., 214; Dickey v. Tennison, 27 Mo., 373; State v. Trenton, 36 N. J. Law, 499; Highway Comrs. v. Claw, 15 Johns., 537; Gamble v. McCrady, 75 N. C., 509; Kramer v. Cleveland & P. Ry. Co., 5 Ohio St., 140; In re Road, 109 Pa. St., 118; Baltimore & O. Ry. Co. v. Pittsburg W. & Ky. Ry. Co., 17 W. Va., 812; Seifert v. Brooks, 34 Wis., 443; Langford v. Ramsey Co., 16 Minn., 375; Savannah F. & W. Ry. Co. v. Savannah, 96 Ga., 680.

A provision in a statute giving to the owner a right to claim damages or appeal from a proceeding implies a duty to give him notice of the proceedings. Tracy v. Elizabeth, etc., Ry. Co., 80 Ky., 259; Dickey v. Tennison, 27 Mo., 373.

The notice must appear on the record of the proceedings. 7 Am. and Eng. Enc. of Pl. and Prac., 487; Neeld's Road Case, 1 Pa. St., 353; Windsor v. McVeigh, 93 U. S., 274; Stuart v. Palmer, 74 N. Y., 183; Boonville v. Ormrod, 26 Mo., 193.

*W. B. Ware,* for defendants in error.—Notice of the condemnation proceedings is not necessary in establishing a public road, where the public uses the road for years for the purposes of travel under a claim of right. Albert v. Gulf, etc., Ry. Co., 2 Texas Civ. App., 664.

It is evident from the order of the court appointing viewers to open this road that it was laid out under article 4674 of the Revised Civil Statutes, and we take the position that notice is not necessary to the owner of adjacent lands in opening the four roads provided by this article. Article 4675, immediately following the above article, provides the manner in which the roads shall be laid out and says nothing about the notice to land owners. Article 4676 provides: "If damages are claimed by any owner of land so appropriated for public highways or by any person where inclosed premises are crossed, a jury to assess such damages shall be appointed as now provided in article 4690 of the Revised Statutes." Thus it will be seen that the four roads provided for in article 4674 shall be laid out by a jury of view in the first instance, and if, after this is done, damages are claimed, another jury shall be appointed to assess such damages. No notice is required by article 4675, which prescribes the mode of procedure for the jury. Article 4678 and the articles following prescribe the mode of laying out roads in addition to the roads provided for in article 4674, and the contention here made is given additional force by the fact that article 4691 prescribes that the jury provided for in article 4688 (naming it) shall give notice to the owner of the lands through which such proposed roads shall run. If the Legislature had intended to require the notice

to be given in opening the roads provided for in article 4674 it would have been an easy matter to have inserted it in article 4691. In article 4692 the mode of procedure by the jury is set out, which is entirely different from that provided for opening the roads in the direction of adjacent county seats. The roads to county seats must be opened; other roads may be opened on petition. In opening the four roads toward adjacent county seats four things must be done, to wit: (1) The commissioners court must appoint a jury of view to lay out the road; (2) the jury of view so appointed must mark and define the road; (3) the jury shall report in writing to the commissioners court; (4) the court must declare the road a public highway. When all these things concur the road becomes a public highway and the owners of the land, if any, may then "file their claims for damages and have such claims passed upon by a jury as provided in article 4691. Article 4676 says: "If any damages are claimed by any owner of land so appropriated for public highways, or by any person where inclosed premises are crossed, a jury to assess such damages shall be appointed as now provided in article 4690 of the Revised Statutes." Does this not mean that the land has already been appropriated and that the inclosed premises are already crossed? Else why should a new jury be provided for to assess the damages? Under article 4687, which provides for the opening of roads on petition, the jury must assess the damages before the land is appropriated. The contention here made is borne out by the language of article 4680, which says, "Where there are no persons in the unorganized counties to act, or willing to serve on the jury of view or jury to assess damages, the court shall designate citizens of their own county to perform the service."

The case of Kelley v. Honea, 7 Texas Ct. Rep., 281, indicates the views here maintained. The case of Evans v. Santana Live Stock and Land Co., 81 Texas, 624, seems to hold a different view to that here contended for, but that part of the opinion in that case which touches on the question was not necessary to the determination of that case and is dicta. In the case of Sneed v. Falls County, 91 Texas, 170, our Supreme Court says: "The State had the inherent right to take the property for a public road and the owner had no right to question its determination to do so; but his sole right was to have compensation." The citizen holds his land always subject to the superior title of the sovereign in the exercise of the right of eminent domain. In the case of San Antonio v. Grandjean, 91 Texas, 432, the question is fully discussed and the court says: "The conditional paramount title of the government becomes absolute when the compensation is assessed, or agreed upon and paid, or when its payment is waived."

GAINES, CHIEF JUSTICE.—The plaintiffs, who were husband and wife, brought this suit against the defendant Oliver, who, in the year 1901, the time of the injuries complained of, was the sheriff of Donley County; against the sureties on his official bond, and against B. H. White

and four others who were at the time the county judge and the commissioners of the county. The plaintiffs alleged in their petition, in substance, that Mrs. Morgan was the owner in her separate right of a section of land in Donley County, which was fenced and upon which crops had been planted and were growing; that the sheriff, acting under the ˙orders of the county judge and county commissioners, had removed her gates which were upon the north and south sides of the section respectively and had opened a public road across it; and that thereby she had lost her interest in the crops and had been otherwise damaged.

The main ground of defense was that a public road had been lawfully laid out across the section and that the plaintiff had unlawfully obstructed it by the erection of her fences and gates; and that it was upon this road that the gates were removed.

, The plaintiff Mrs. Morgan testified that she bought the land in 1895 of one Loomas; that he was dead and that she did not know of any public road across the section. She also testified to the removal of her gates and as to the consequent damages to the land and the crops.

The defendants, in order to show that a public road had been legally laid out and established across the section of land, introduced in evidence the following proceedings from the records of the Commissioners Court of Donley County. First. An order entered on the minutes of that court on the 12th day of August, 1890, of which the following is a copy: "It is ordered that four first-class roads, sixty feet in width, be laid out in Donley County. First road from Clarendon northerly towards the center of the unorganized county of Gray. We hereby appoint as a jury of freeholders to lay out said roads, Wm. Wagner, John Dalby, W. D. Anderson, W. A. Allan and J. T. Parks, who shall proceed with the county surveyor after being qualified, to lay out and survey such roads to the greatest advantage to the public. The clerk will notify the jurors in the manner prescribed by law."

Second. The following report made to the court by the jury of view, dated February 2, 1891:

"In the Commissioners Court of Donley County, Texas: We, the undersigned freeholders and residents of Donley County, Texas, duly appointed a jury by the Commissioners Court of said county, at the August term thereof, 1890, to lay out, survey and describe first-class roads designated in the order of said court, for said public roads, having been duly sworn according to law, did between the first day of September and the nineteenth day of December, A. D. 1890, proceed to lay out, survey and describe said roads, and would recommend that a first class road be established according to law, in accordance with the field notes, survey and description of the same as follows:

"Road to Gray County.—Thence north on center line 33, C6, 90 varas to a rock mound on hill the center of the south line of survey 30

in blk. C6. Thence north 1900 varas a rock in center of road at the center of the south line of section 25 in block C6.

"We would further report that having examined all claims presented to us for damages claimed on any lands through which these roads pass that we find no damages have been sustained, not fully compensated by the advantages thereof, and we recommend that no damages be allowed."

Third. An order entered at the May term, 1891, of the Commissioners Court of the county, of which the following is a copy:

"It is hereby ordered that the report of the jury of view (heretofore appointed by this court) in writing, marking out and defining the said road and filed with the court, be accepted, and said road is hereby declared as a road of the first class, and it is ordered that the same be opened in accordance with the law."

The defendants also introduced in evidence an order of the Commissioners Court entered in April term, 1901, ordering the opening of the road—all the members of the court being present.

Other orders of the court were also put in evidence, but we do not think it necessary to notice them further than to say, that it nowhere appears in any of the proceedings of the court that Mrs. Morgan's vendor, Loomas, was served with any notice of either of the orders above set forth, or of the action of the jury of view in laying out the road, or in determining the question of damages to the owners of the property taken. Nor was the fact of notice to him proved in any other manner.

There was evidence in the record tending to show that the gates which were removed were not upon the road which was laid out under the order of 1890.

Such being the state of the evidence the court instructed a verdict for the defendants. The Court of Civil Appeals affirmed the judgment as to the county judge and commissioners who made the order of April, 1901, directing the sheriff to open the road, but reversed and remanded the case as to Oliver, the sheriff, and the sureties on his bond. The ground of the reversal as to those defendants was, that there was evidence tending to show that the gates that were removed were not upon the road laid out pursuant to the order of August 12, 1890. That branch of the case is not before us for review.

The question is, was the road which was laid out in 1901 lawfully established as a public road? and the answer depends upon the further question, was notice to the owner of the land of the fact of the laying out of the road and of an assessment of his damages necessary to effect a lawful condemnation?

Our Constitution provides that: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money." Art. 1, sec. 17. That the condemnation of land for a county road is a taking by the

State is no longer a question in this court. Travis County v. Trogdon, 88 Texas, 302. The road in question was laid out under an act of the Legislature, approved February 7, 1884, which made it the duty of the commissioners courts of the respective counties of the State to lay out public roads from their respective county seats to the county line in the direction of the county seats of the adjoining counties; and in case the adjoining county be unorganized, then in the direction of the center of such county.

Was notice to the owner necessary in order to make an effective condemnation of the land for the road? We do not doubt that the State has the power to provide for the designation of property to be taken for its own use, through its own agencies, without notice to the owners. That is a matter upon which, in our opinion, the owners have no constitutional right to be heard. But as to the assessment of the compensation for the taking the case, as we think, is different. Upon the latter question there is some conflict of authority. In some very early cases it seems to have been held that the property could be taken and the damages assessed without notice to the owner. Such was the holding in the case of Steward v. Board of Police, 25 Miss., 479. The case presented the precise question we are now considering and was followed in a subsequent case by the same court. New Orleans J. & G. N. Ry. Co. v. Hemphill, 35 Miss., 17. But we think the ruling in those cases against the decided weight of authority. We cite some of the cases which hold the contrary doctrine. Stewart v. Palmer, 74 N. Y., 183; State v. Reed, 38 N. H., 59; State v. Trenton, 36 N. J. L., 202; Gamble v. McCrady, 75 N. C., 509; Commonwealth v. Cambridge, 4 Mass., 627; Langford v. Commissioners, 16 Minn., 377; Tracy v. Elizabethtown L. & B. S. Ry. Co., 80 Ky., 259; Lawless v. Reese, 4 Bibb, 309; Jamison v. Springfield, 53 Mo., 224; In re Road in S. Abington Township, 109 Pa. St., 118; Zimmerman v. Canfield, 42 Ohio St., 463; Baltimore & O. Ry. Co. v. Pittsburg W. & Ky. Ry. Co., 17 W. Va., 812.

At common law every proprietor holds his property subject to the right of the sovereign to take it for public use. That right under the Constitution of this State is subject to the condition that compensation for the property and for all damages incident to its taking must be assessed and, except in case of the State itself, must be paid for or secured. Therefore the amount of this compensation is a matter of vital interest to the owner of the property sought to be condemned. Every principle of justice demands that upon the determination of that matter he should have a right to be heard.

It is argued in behalf of the plaintiffs in error that neither the Constitution nor the statute is applicable to this case. As is seen from what we have already said, we do not concur in the proposition as to the requirement of the Constitution. Neither do we concur as to the construction of the statute.

The statute under which the road in question was laid out was passed

by the Eighteenth Legislature and was approved February 7, 1884, and is now incorporated in the Revised Statutes of 1895, in articles 4674 to 4681 inclusive. The first section of the act, as we have seen, makes it the duty of the commissioners courts of the several counties of the State to lay out certain first class public roads in their respective counties. We quote such sections as bear upon the question before us:

"Section 2. It shall be the duty of each commissioners court within ninety days after the passage of this act, on their own motion, to appoint a jury of view to lay out the roads required in the preceding section, and to mark and define them, and to report in writing such marks and any prominent natural objects that may aid in defining the route selected. And upon the report of the jury of view such roads shall be declared public highways of the first class and the court shall order the overseer to open the same, and where the country is open prairie to plow a furrow on each side of the road and establish monuments at convenient intervals."

"Section 3. If damages are claimed by any owner of land so appropriated for public highways, or by any person where inclosed premises are crossed, a jury to assess such damages shall be appointed as now provided in section 4371 of the Revised Statutes."

"Section 4. If the damages assessed be excessive, the court may appoint another jury to assess them, and upon the second report, if the damages are deemed excessive, the court may change the road so as to avoid the property so greatly damaged, provided such change will not divert the road more than one-quarter of a mile from a direct line; provided further, that in all cases where the owner or owners of lands over which such roads shall pass shall have the right of appeal to the district court where the same shall be tried (by first giving a bond in a sufficient amount to cover all costs), and if a greater amount of damages is there obtained the county shall pay the excess and the costs, but if no greater damages are obtained the party taking the appeal shall pay all costs, provided that such appeal shall in no case delay or prevent the immediate opening of such road after the damages assessed as above have been tendered."

Article 4371 referred to in the third section is the article of that number in the Revised Statutes of 1879, which is as follows:

"Art. 4371. If such written consent should be refused it shall be the duty of the commissioners court to appoint five disinterested freeholders, residents of the county, as commissioners, a majority of whom may act, to view the same, assess the damages incidental to the opening of the road of the first, second or third class through any part of said farm, lot or inclosure as proposed, taking into consideration the advantages and disadvantages accruing to such owner from the opening of such road, and report their action in writing and under oath to the next regular term of the commissioners court."

That article is a part of the provisions of the Revised Statutes of

1879, which provided for the establishment of public roads in ordinary cases. The preceding article (4370) provided that: "No public road shall be surveyed or laid out upon or across any farm, lot or inclosure, without first obtaining the written consent of the owner or his agent or attorney to the same, except as hereinafter provided." This article is not expressly referred to in section 3, but we think it is clearly to be implied therefrom that the written consent of the owner was to be applied for, and if not obtained, then that five freeholders should be appointed to assess the damages. In a very similar case in Maryland, the Supreme Court of that State held that it should be implied from the provisions of the statute that notice was required; although the statute contained no express declaration to that effect. Baltimore Belt R. R. Co. v. Baltzell, 75 Md., 94. In this case the records of the Commissioners Court fail to show that even any commissioners were appointed to assess the damages of the owners. On the contrary, they disclose that that duty was attempted to be performed by "the jury of view" who laid out the road and upon whom no such duty was devolved.

We note in this connection that article 4676 of the Revised Statutes of 1895 is in the same words as section 3 of the statute we have had under consideration, except that instead of "article 4371" as used in the statute the revision reads "article 4690." This is an evident mistake. Article 4690 of the Revised Statutes of 1895 makes no provision for the appointment of a jury to assess damages. But this is unimportant so far as this case is concerned, for the reason that the attempted condemnation in this case took place before the enactment of the Revised Statutes of 1895.

For the error of the court in instructing a verdict for the defendants in whose favor the judgment was affirmed, the judgment is also reversed and the cause is remanded as to them.

*Reversed and remanded.*