IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0986
════════════
 
Harris County Hospital 
District, Petitioner,
 
v.
 
Tomball Regional Hospital, Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Fourteenth District of 
Texas
════════════════════════════════════════════════════
 
Argued December 4, 
2007
 
 
Justice Johnson delivered the opinion of 
the Court, in which Justice Hecht, 
Justice Wainwright, Justice Medina, and Justice Green joined.
 
Chief Justice Jefferson filed a 
dissenting opinion, in which Justice 
O=Neill, Justice Brister, and Justice Willett joined.
 
 
In this case 
we consider whether Harris County Hospital District is immune from suit by the 
Tomball Hospital Authority to recover medical expenses for hospital care the 
Hospital Authority rendered to indigent patients. We hold that the Legislature 
has not waived the district=s immunity from suit either 
by specific statutory language or by implication from a constitutional and 
statutory framework.
I. Background
Tomball 
Hospital Authority (THA) was created and organized pursuant to chapter 262 of 
the Texas Health and Safety Code. Tex. 
Health & Safety Code 
ch. 262.[1] It owns and operates Tomball Regional Hospital (the hospital) in Harris County. From 2001 to 2002, the hospital 
provided medical care to certain indigent patients who were residents of the 
Harris County Hospital District (HCHD). THA sought payment from HCHD for the 
care it provided, but HCHD refused to pay. THA sued HCHD in district court, 
basing its claim on the Indigent Health Care and Treatment Act (IHCTA) and the 
Texas Constitution. In a plea to the jurisdiction and motion for dismissal and 
alternatively for summary judgment, HCHD asserted that (1) it had governmental 
immunity from suit; (2) county courts had exclusive jurisdiction over the 
matters; and (3) the Texas Department of Health had exclusive, original 
jurisdiction over the claim. THA responded by alleging that jurisdiction was 
proper in the district court and that Article IX, Section 4 of the Texas 
Constitution and Health and Safety Code sections 61.002(6), 61.0045, 61.060, and 
281.056(a), which require a hospital district to provide and pay for indigent 
care, waived HCHD=s 
governmental immunity.
The trial 
court granted HCHD=s 
plea to the jurisdiction and motion to dismiss. In an opinion predating this 
Court=s decision in 
Tooke v. City of Mexia, 197 S.W.3d 325 (Tex. 2006), the court of appeals 
concluded that Health and Safety Code section 281.056(a) providing that boards 
of hospital districts like HCHD may “sue and be sued” waived HCHD=s immunity from suit. 178 S.W.3d 244, 252-53. The court of appeals also determined 
that the Health and Safety Code did not vest exclusive, original jurisdiction in 
either the county court or the Texas Department of Health. Id. at 
254-55. The court reversed and remanded the case. Id. at 
256.
In this 
Court, HCHD challenges the court of appeals= holding that the “sue and 
be sued” language in section 281.056(a) waives its governmental immunity. THA 
argues the court of appeals is correct, but also contends that even if section 
281.056(a) does not explicitly waive HCHD=s immunity to suit, its 
immunity is waived by a framework of law that includes the Texas Constitution 
and the Health and Safety Code. Additionally, THA argues that upholding 
HCHD=s claim that it 
retains immunity will lead to: (1) cities withholding taxes collected for 
hospital districts in order to offset debts owed by districts to the cities for 
indigent care resulting in suits against the cities to recover the withheld 
taxes; (2) bankruptcies of cities and municipal hospital authorities; and (3) 
violations of Texas Constitution Article III, Section 52(a) by cities in that a 
public benefit does not result from expenditures of public funds benefitting indigent parties not entitled to care by the 
cities. Disagreeing with THA=s positions, we reverse the 
judgment of the court of appeals and dismiss the case.
II. Standard of Review
A party 
asserting governmental immunity to suit challenges the trial court=s jurisdiction. 
See 
State v. Holland, 221 S.W.3d 639, 642 (Tex. 2007). A 
motion or plea asserting such immunity involves a question of law that we review 
de novo. Id. Further, THA=s assertions require review 
of both Texas 
constitutional and statutory provisions which involve matters of law and are 
reviewed de novo. See City of San Antonio v. City of Boerne, 111 S.W.3d 
22, 25 (Tex. 2003); Tex. Nat=l Guard Armory Bd. v. McCraw, 126 S.W.2d 627, 634 (Tex. 1939) (noting that 
the Constitution is the fundamental law of the State).
III. Analysis
A. Construction
In construing 
the Constitution, as in construing statutes, the fundamental guiding rule is to 
give effect to the intent of the makers and adopters of the provision in 
question. Cox v. Robison, 150 S.W. 1149, 1151 
(Tex. 
1912). “We presume the language of the Constitution was carefully 
selected, and we interpret words as they are generally understood.” City of Beaumont v. Bouillion, 896 S.W.2d 143, 148 (Tex. 1995). We 
rely heavily on the literal text. Stringer v. Cendant 
Mortgage Corp., 23 S.W.3d 353, 355 (Tex. 2000). However, we may consider 
such matters as the history of the legislation, Harris v. City of Fort 
Worth, 180 S.W.2d 131, 133 (Tex. 1944), the conditions and spirit of the 
times, the prevailing sentiments of the people, the evils intended to be 
remedied, and the good to be accomplished. See Dir. of the Dep=t of Agric. & Env=t v. Printing Indus. 
Ass=n of 
Tex., 600 S.W.2d 264, 267 (Tex. 1980).
In construing 
a statute, our objective is to determine and give effect to the Legislature=s intent. State v. 
Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002); see also Tex. Gov=t Code § 312.005; Am. Home Prods. 
Corp. v. Clark, 38 S.W.3d 92, 
95 (Tex. 
2000). We look first to the “plain and common meaning of the 
statute=s words.” 
Gonzalez, 82 S.W.3d at 327 (internal quotation marks omitted) (quoting 
Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 865 
(Tex. 1999)). 
We determine legislative intent from the statute as a whole and not from 
isolated portions. Id.
B. Governmental Immunity
Governmental 
immunity protects political subdivisions of the State from lawsuits for damages. 
See Reata Constr. Corp. v. City of Dallas, 197 S.W.3d 371, 374 (Tex. 2006). 
Hospital districts have such immunity. See Martinez v. Val 
Verde County Hosp. 
Dist., 140 S.W.3d 370, 371 (Tex. 2004). Governmental 
immunity, like the doctrine of sovereign immunity to which it is appurtenant, 
involves two issues: whether the State has consented to suit and whether the 
State has accepted liability. Wichita Falls 
State Hosp. v. Taylor, 106 S.W.3d 692, 696 (Tex. 2003). 
Immunity from suit is jurisdictional and bars suit; immunity from liability is 
not jurisdictional and protects from judgments. Tex. Dep=t of Parks & Wildlife 
v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004). Immunity is waived only by clear 
and unambiguous language. See Tex. Gov=t Code § 311.034 (“[A] statute shall 
not be construed as a waiver of sovereign immunity unless the waiver is effected 
by clear and unambiguous language.”); Tooke, 
197 S.W.3d at 328-29.
C. “Sue and be sued”
The board of 
managers of a hospital district “shall manage, control and administer the 
hospital or hospital system of the district.” Tex. Health & Safety 
Code § 281.047. Section 
281.056 is entitled “Authority to Sue and be Sued; Legal Representation” and 
provides that “[t]he board may sue and be sued.” The court of appeals held that 
this language waived immunity from suit. 178 S.W.3d 
252-53. In its brief predating this Court=s decision in Tooke, THA cites Missouri Pacific Railroad Co. v. 
Brownsville Navigation District, 453 S.W.2d 812, 813-14 (Tex. 1970), and 
Tarrant County Hospital District v. Henry, 52 S.W.3d 434, 448 (Tex. 
App.—Fort Worth 2001, no pet.), in support of the court of appeals= decision. HCHD discounts 
Missouri Pacific and Henry because they were decided before Tooke. We agree with HCHD.
When an 
entity=s organic 
statute provides that the entity may “sue and be sued,” the phrase in and of 
itself does not mean that immunity to suit is waived. Tooke, 197 S.W.3d at 337. 
Reasonably construed, such language means that the entity has the capacity to 
sue and be sued in its own name, but whether the phrase reflects legislative 
intent to waive immunity must be determined from the language=s context. Id. Thus, section 
281.056(a) does not in and of itself waive HCHD=s immunity. See id. 
at 334, 337. Nor does section 281.056(a)=s 
language indicate a waiver of HCHD=s immunity when considered 
in context with the remainder of section 281.056 which specifies who will 
represent the district in civil proceedings. This section anticipates the 
district=s involvement 
in civil proceedings of some nature at some point, but it does not address 
immunity from suit. See id.
Likewise, the 
other sections of chapter 281 do not, in context, reflect legislative intent to 
waive immunity. For example, section 281.050 authorizes a district, in broad 
terms and subject to approval of the commissioners 
court, to construct, acquire, and maintain property and hospital facilities to 
provide services. Section 281.051 grants authority, again subject to approval of 
the commissioners court, to contract or cooperate with various governmental and 
private entities to fulfill a district=s duties and to enter 
contracts to provide for medical care of certain classes of needy individuals. 
Section 281.055 authorizes districts to accept gifts and endowments to be held 
in trust and to administer them.
The context 
in which section 281.056(a) is found shows that the Legislature intended to 
invest districts with powers and authority necessary to conduct their business, 
subject in large part to approval of the county commissioners court. There is, 
however, no indication that by use of the “sue and be sued” language the 
Legislature clearly intended to waive districts= immunity from suit. We 
conclude that section 281.056(a) does not, either by itself or in context, 
clearly and unambiguously waive HCHD=s immunity to suit.
Next, we turn 
to THA=s claim that 
HCHD=s immunity is 
waived by the framework of law created by the Texas Constitution and certain 
sections of the Health and Safety Code.
D. Constitutional Provisions
Article IX, 
Section 4 of the Texas Constitution was proposed and adopted as an amendment in 
1954. It provides that if a hospital district is legislatively authorized and 
created, “such Hospital District shall assume full responsibility for providing 
medical and hospital care to needy inhabitants of the county and thereafter such 
county and cities therein shall not levy any other tax for hospital purposes.” 
Id. At 
the time the amendment was proposed, city-county hospitals were supported by 
both city and county taxes. The amendment was meant to address the issue of city 
residents being taxed by both cities and counties to support the hospitals, 
while non-city residents paid only county taxes. Dallas= Stake Big in Hospital 
Vote, Dallas Morning News, Oct. 24, 1954, at pt. 
VII, p. 6. At that time, the common-law doctrine of sovereign immunity that 
Ano state can be sued 
in her own courts without her consent, and then only in the manner indicated by 
that consent” had been established in Texas for over one hundred years. See Tooke, 197 S.W.3d at 331 (internal quotation marks 
omitted) (quoting Hasner v. DeYoung, 1 Tex. 764, 769 (1847)). The constitutional 
language as it was proposed and adopted did not address waiver of a hospital 
district=s immunity. 
The constitutional language bears on a hospital district=s liability for 
providing care, but it does not address the method by which that liability may 
be enforced; that is, whether a hospital district is or is not immune from suit 
to establish and secure a judgment for the amount of whatever its liability may 
be. We need go no further than the plain language of the Constitution to 
conclude it does not provide that suits for damages may be filed against a 
hospital district. See Bouillion, 896 S.W.2d at 148.[2] We hold that article IX, section 4 does 
not waive a district=s 
governmental immunity from suit.
E. Statutory Provisions
Looking next 
to the statutes involved, we note that it is more difficult to determine 
legislative consent to suit against an entity when language specifying that 
“immunity is waived” is absent from the provisions in question. Taylor, 106 S.W.3d at 697. We have developed aids to help analyze 
statutes for legislative consent to suit: (1) whether the statutory provisions, 
even if not a model of clarity, waive immunity without doubt; (2) ambiguity as 
to waiver is resolved in favor of retaining immunity; (3) immunity is waived if 
the Legislature requires that the entity be joined in a lawsuit even though the 
entity would otherwise be immune from suit; and (4) whether the Legislature 
provided an objective limitation on the governmental entity=s potential liability. 
See id. at 697-98. We have also considered 
whether the statutory provisions would serve any purpose absent a waiver of 
immunity. See, e.g., id. at 700; Tex. Dep=t of Transp. v. City of Sunset Valley, 146 S.W.3d 637, 643 (Tex. 2004); Kerrville State Hosp. v. Fernandez, 28 S.W.3d 1, 6 
(Tex. 
2000).
Pursuant to 
the authority granted by Texas Constitution Article IX, Section 4, section 
281.002 of the Health and Safety Code statutorily authorizes creation of 
hospital districts in counties with populations over 190,000. Section 281.046 
provides that if such a district is created, then “[b]eginning on the date on which taxes are collected for the 
district, the district assumes full responsibility for furnishing medical and 
hospital care for indigent and needy persons residing in the district.” Section 
281.046=s language 
parallels that of the Constitution insofar as mandating that once a district 
begins collecting taxes for purposes of providing health care to indigents, then 
it has the responsibility to provide such care. Our analysis of the similar 
constitutional language applies to section 281.046 which is, for purposes of the 
issue before us, the same as the language in article IX, section 4. The 
statutory language might impact or even foreclose the question of whether a 
hospital district is liable for allowable expenses, an issue not before 
us, but the statute is silent as to waiver of a district=s immunity from suits such 
as the one THA has brought. And section 281.046 neither requires the district to 
be joined in some type of suit nor does it set an objective limitation on the 
district=s potential 
liability. See Taylor, 106 S.W.3d at 
697-98. In sum, section 281.046 does not waive HCHD=s immunity from suit.
We next 
consider THA=s 
argument that HCHD=s 
immunity is waived by Section 61.002(6) of the IHCTA. Section 61.002 contains 
definitions applicable to that chapter:
 
(6) 
“Governmental entity” includes a county, municipality, or other political 
subdivision of the state, but does not include a hospital district or hospital 
authority.
(7) 
“Hospital district” means a hospital district created under the authority of 
Article IX, Sections 4-11, of the Texas Constitution.
 
THA claims 
that because a hospital district is excluded from the definition of 
“governmental entity,” immunity does not apply to hospital districts for claims 
under the IHCTA because only “governmental entities” are protected by the 
doctrine of governmental immunity. A fair and reasonable reading of the statute 
yields the conclusion that where the term “governmental entity” is used 
in the chapter, a hospital district is not included. If the chapter said that 
notwithstanding any provision of the chapter that might be interpreted 
otherwise, immunity is retained for governmental entities, then THA’s argument would carry greater weight. But the chapter 
nowhere addresses immunity of “governmental entities.” Applying the 
interpretation aids of Taylor, we conclude that section 
61.002(6)’s definition of “governmental entity” which excludes HCHD, does not 
waive HCHD’s immunity. See Taylor, 106 S.W.3d at 697-98.
Section 
61.0045 is entitled “Information Necessary to Determine Eligibility.” Section 
61.0045(a) allows medical service providers to require patients to furnish and 
authorize the release of information necessary for determination that the 
patient is an eligible resident of the service area so the provider may submit a 
claim to the Acounty, hospital 
district, or public hospital that is liable for payment for the service.” 
Section 61.0045(b) provides:
 
A county, 
hospital district, or public hospital that receives information obtained under 
Subsection (a) shall use the information to determine whether the patient 
to whom services were provided is an eligible resident of the service area of 
the county, hospital district or public hospital and, if so, shall pay 
the claim made by the provider in accordance with this chapter.
 
(Emphasis 
added). THA argues that the use of “shall” mandates payment by HCHD, and if the 
language is not interpreted as waiving HCHD’s immunity 
from suit, then the statute’s use of mandatory language is of no effect. THA 
urges that failing to interpret section 61.0045 as waiving immunity would 
violate our principles of statutory construction and the Legislature’s mandate 
that in interpreting statutes it is presumed the entire statute is intended to 
be effective and that a just and reasonable result is intended. See Tex. Gov’t Code § 311.021(2),(3). We disagree with THA. Like our discussion of sections 
281.046 and 61.002(6), the analysis for legislative consent to suit applies here 
as well: (1) the statutory provisions do not waive the district’s immunity from 
suit without doubt; (2) to the extent the statute creates some ambiguity as to 
waiver of immunity from suit, we resolve the doubt in favor of retaining 
immunity; (3) neither section 61.0045 nor chapter 61 requires a hospital 
district to be joined as a party to some type of lawsuit; and (4) neither 
section 61.0045 nor chapter 61 places an objective limitation on any potential 
liability. See Taylor, 106 S.W.3d at 
697-98.
Section 
61.0045 requires a hospital district to pay claims by a provider for services 
rendered to an eligible resident of the district. But as with Article IX, 
Section 4 of the Constitution and section 281.046, section 61.0045 is directed 
toward the question of whether a hospital district is liable for 
allowable expenses; but the statute is silent as to waiver of a district’s 
immunity from suit asserting a right to reimbursement by parties such as 
THA. Thus, section 61.0045 does not waive HCHD’s 
immunity from suit.
Section 
61.060 is entitled “Payment for Services.” Section 61.060(b) provides that “[a] 
hospital district is liable for health care services as provided by the Texas 
Constitution and the statute creating the district.” Section 61.060 also 
addresses a hospital district’s liability for payment and not its immunity from 
suit. THA’s urging that section 61.060 waives HCHD’s immunity from suit is misplaced for the reasons we 
have expressed above as to sections 281.046, 61.002(6), and 61.0045.
F. Additional Considerations
Next we 
consider THA’s assertion that the IHCTA is part of a 
framework of law that waives HCHD’s immunity from 
suit. THA contends that the provisions of the IHCTA, when considered with the 
previously discussed language of Article IX, Section 4 of the Constitution and 
section 281.046(a) (specifying that a hospital district “assumes full 
responsibility for furnishing medical and hospital care for indigent and needy 
persons residing in the district”), yield the inescapable conclusion that the 
Legislature intended for hospital districts’ immunity from suit to be waived. 
Districts could then be required to pay claims for which they are statutorily 
liable and for which they have received tax money. THA posits that if the law 
were otherwise, hospital districts could collect taxes to pay for indigent care, 
yet deny a treating entity’s requests for payment with impunity, thereby 
transferring the cost of the care to entities such as THA that do not have 
taxing authority. See Tex. Health & Safety Code §§ 
262.003(e), 281.045(a) (providing that a hospital authority does not have taxing 
power). THA warns that if we hold the Legislature has not 
waived HCHD’s immunity from suit, then (1) cities will 
begin withholding taxes collected for hospital districts and offset those 
collections against alleged Adebts” owed by 
districts to the cities for indigent care, resulting in numerous suits by 
districts to recover the taxes withheld; (2) cities and municipal hospital 
authorities will be bankrupted by paying for indigent medical care; and (3) 
cities and municipal hospital districts, by expending funds for care of 
ineligible indigents will be in violation of Texas Constitution Article III, 
Section 52(a). Despite THA’s construct and warnings of 
dire results if HCHD prevails here, we disagree with THA that the statutory 
framework or predicted negative effects of sustaining HCHD’s claim of immunity to suit justifies our reading clear 
and unambiguous waiver language into the statutes. See Seay v. Hall, 677 S.W.2d 19, 25 (Tex. 1984) (“While this 
court may properly write in areas traditionally reserved to the judicial branch 
of government, it would be a usurpation of our powers to add language to a law 
where the legislature has refrained.”); Simmons v. Arnim, 220 S.W. 66, 70 (Tex. 1920) (“[Courts] are not 
the law‑making body. They are not responsible for omissions in legislation. They 
are responsible for a true and fair interpretation of the written law.”).
Even though a 
hospital district assumes responsibility for providing medical and hospital care 
as a condition of collecting a tax, none of the statutes referenced by THA 
clearly waive a hospital district’s governmental immunity so it can be sued over 
how and when the tax receipts are spent. And policy 
determinations involving who actually collects taxes, whether collecting 
entities are subject to suit if taxes are withheld by the collecting authority, 
whether laws will result in bankruptcy of municipal entities, and conforming 
statutory mandates for indigent care to constitutional mandates are the very 
type of policy decisions the Legislature is expected to make. The 
judiciary’s task is not to refine legislative choices about how to most 
effectively provide for indigent care and collect and distribute taxes to pay 
for it. The judiciary’s task is to interpret legislation as it is written. See McIntyre v. Ramirez, 109 S.W.3d 741, 748 (Tex. 2003) (“Our role . . 
. is not to second‑guess the policy choices that inform our statutes or to weigh 
the effectiveness of their results; rather, our task is to interpret those 
statutes in a manner that effectuates the Legislature’s intent.”). And as 
to THA’s contention that municipal hospital districts’ 
expenditures for certain indigent health care are a constitutional violation, no 
one has charged in this case that THA’s expenditures 
are unconstitutional, and whether they are is not an issue properly 
presented.
THA also argues 
that in light of the constitutional provision, the Legislature must have 
intended to waive immunity to suit by so thoroughly addressing hospital 
districts’ liability and procedures for determination of eligibility of 
indigents for care.[3] THA refers to two statutes that have been 
interpreted as waiving sovereign or governmental immunity by language that the 
governmental entity “is liable for” certain damages, similar to the statutes 
under consideration here. The first is the Tort Claims Act’s provision that “[a] 
governmental unit in the state is liable for . . . property damage, personal injury, 
and death” under certain circumstances. See Tex. Civ. Prac. & Rem. 
Code § 101.021. THA 
cites University of Texas Medical Branch v. York, 871 S.W.2d 175, 177-79 
(Tex. 1994), 
for support. THA’s reliance on the language of the 
Tort Claims Act and York is misplaced. First, the Tort Claims Act 
specifically waives immunity in section 101.025:
 
101.025 
Waiver of Governmental Immunity; Permission to Sue
(a) 
Sovereign immunity to suit is waived and abolished to the extent of liability 
created by this chapter.
(b) A 
person having a claim under this chapter may sue a governmental unit for damages 
allowed by this chapter.
 
Tex. Civ. Prac. & Rem. 
Code § 101.025. And in 
York, the question was not whether immunity to suit had been waived by 
the Tort Claims Act; the issue was whether the use, misuse, or non-use of 
information recorded in a patient’s medical records constituted use of tangible 
personal property for which governmental immunity is waived. York, 871 S.W.2d at 175.
THA also points 
to Code of Criminal Procedure article 104.002(a) which states “[e]xcept as otherwise provided by this article, a county is 
liable for all expenses incurred in the safekeeping of prisoners . . . kept 
under guard by the county.” THA refers us to Harris County v. Hermann 
Hospital, 943 S.W.2d 547 (Tex. App.—Eastland 1997, no writ), in which a 
suspect who was under guard by Harris 
County was taken by Life Flight to 
Hermann 
Hospital and treated. When 
the County refused to pay for the care rendered, Hermann Hospital sued. Id. at 
548. The trial court denied Harris County’s motion for summary judgment and granted that 
of Hermann 
Hospital. Id. The question 
of immunity to suit was not urged, but the court of appeals, in addressing 
Harris County’s claim that article 104.002 did not authorize a third-party 
lawsuit against the County held that “[a]lthough the 
statute does not explicitly authorize a suit against a county for the payment of 
prisoners’ medical expenses, it is clear that the statute imposes liability for 
these expenses on counties.” Id. at 
550. The court then stated that the hospital’s only recourse after the 
County refused to pay was to bring suit. Id. The court relied on former Texas 
Local Government Code section 81.041[4] (now section 89.004) which provided that 
“a person may not sue on a claim against a county unless the person has 
presented the claim to the commissioners court and the commissioners court has 
neglected or refused to pay all or part of the claim.” The court also cited 
Farmers State Bank of New Boston v. Bowie County, 95 S.W.2d 1304, 1306 
(Tex. 1936), and Jensen Construction Co. v. Dallas County, 920 S.W.2d 
761, 770 (Tex. App.—Dallas 1996, writ denied), which interpreted similar 
statutory language to determine whether suit against a county was authorized. We 
are not persuaded that the referenced authorities are a firm footing for THA. 
First, those cases did not rely only on a statute that provided a governmental 
entity was liable. Additionally, after those cases were decided, this Court 
rejected the argument that Texas Local Government Code Section 89.004 waived 
immunity from suit. Travis 
County v. Pelzel & Assocs., Inc., 77 S.W.3d 246, 249 
(Tex. 
2002).
Furthermore, as 
we have noted, “[T]he >heavy presumption in 
favor of immunity’ derives not just from principles related to separation of 
powers but from practical concerns: >In a world with 
increasingly complex webs of governmental units, the Legislature is better 
suited to make the distinctions, exceptions, and limitations that different 
situations require.’” Nueces County v. San Patricio County, 246 S.W.3d 
651, 653 (Tex. 2008) (quoting City of 
Galveston v. State, 217 S.W.3d 466, 469 
(Tex. 2007)). 
Given the interaction between federal, state, and local entities to provide for 
indigent health care, it is the Legislature that is in the better position to 
weigh the competing interests, financial burdens, benefits, and allocation of 
costs and resources among the participants in the process of providing that 
care. If the Legislature intends to waive hospital districts’ immunity from 
suit, we have confidence it will do so clearly and unambiguously, not by 
implication as THA in effect urges has been done. If we were to hold that waiver 
of governmental immunity to suit can occur in the manner contended for by THA—by 
repeatedly using language in statutes to the effect that the district “assumes 
liability” and “is liable” for expenses—our holding would be at odds with the 
Legislature’s plainly expressed intent that statutes not be construed as waiving 
immunity unless there is clear and unambiguous waiver language in the statute. 
See Tex. Gov’t 
Code § 311.034 (“[A] statute shall not be 
construed as a waiver of sovereign immunity unless the waiver is effected by 
clear and unambiguous language.”); id. § 311.016 
(providing that use of the word “shall” in a statute imposes a duty absent another meaning from the context or 
specific statutory provision). The language THA references 
is not a clear and unambiguous waiver of hospital districts’ immunity 
from suit for the type claim it makes. Cf. Tex. Dep’t of 
Transp., 146 S.W.3d at 643-44 (holding that a 
statute’s requirement that compensation “shall be made” does not alone waive 
immunity). Nor does the whole of the referenced framework of 
constitutional and statutory law, when analyzed according to the factors we set 
out in Taylor, lead us to the interpretation 
THA urges.[5]
IV. Response to the Dissent
The dissent 
argues that the case should be remanded based on City of Beaumont v. Bouillion, 896 S.W.2d 143 (Tex. 1995), and City of Elsa v. M.A.L., 226 S.W.3d 
390, 392 (Tex. 
2007), which provide that suits for injunctive relief may be maintained against 
governmental entities. The dissent claims that by not doing so, we preclude THA 
from seeking injunctive relief. But this has always been and remains a suit for 
money damages. In the trial court, THA sought judgment for “liquidated actual 
damages” for the itemized care it had already provided to specific patients as 
well as interest, costs, and attorney’s fees. HCHD filed pleas to the 
jurisdiction asserting immunity, and although THA amended its petition twice, it 
never requested relief other than monetary damages. Nor did THA ask that we 
remand the case so that it may replead and request 
such relief. See State v. Brown, 262 S.W.3d 365, 370 (Tex. 2008) (declining to 
remand a case when the petitioner did not seek such relief).[6]
V. Conclusion
HCHD’s immunity from suit for damages has not been waived 
and the trial court did not have jurisdiction over TRH=s suit. The judgment of the 
court of appeals is reversed and the cause is dismissed.
 
 
________________________________________
Phil 
Johnson
Justice
 
OPINION DELIVERED: May 1, 
2009








[1] Further 
references to provisions of the Health and Safety Code will generally be by 
section numbers.

[2] Even if we 
were to go behind the plain language of the Constitution, the available 
legislative history and records of public discussions about the proposed 
amendment do not show that any consideration was given to the subject of 
immunity from suit.

[3] This argument 
is similar to an argument that the statutes at issue would have no purpose 
absent waiver of HCHD’s immunity from suit. See 
Tex. Dep’t of 
Transp., 146 S.W.3d at 
643. THA does not claim that the statutes have no purpose in the absence 
of waiver. To the contrary, at oral argument THA candidly professed that the 
statutory construct is well designed in regard to allocation of responsibility 
for indigent care.

[4] See Act of May 15, 1987, 70th Leg., R.S., ch. 149, § 1, 1987 Tex. Gen. Laws 707, 
793.

[5] THA also 
references several Attorney General opinions responding 
to questions about county hospital districts’ liability for costs of indigent 
care. The opinions address liability of the districts, but not immunity 
from suit. The referenced Attorney General opinions do not persuade us that 
districts’ immunity from suit has been waived for the reasons we have expressed 
as to statutory provisions addressing districts’ liability for indigent health 
care costs.

[6] In City of 
El Paso v. Heinrich, ___ S.W.3d ___ (Tex. 2009), also issued today, the 
Court holds that a claim for prospective declaratory and injunctive relief 
against government actors in their official capacities but acting ultra 
vires is not barred by immunity even if the requested relief compels the 
governmental entity to make monetary payments. However, the Court reaffirms the 
principle that immunity bars suits against governmental entities for 
retrospective monetary relief. Id. at 
___.